SCOTT EDWARD COLE, ESQ.
MATTHEW R. BAINER, ESQ.
MOLLY A. DESARIO, ESQ.*
COURTLAND W. CREEKMORE, ESQ.**
STEPHEN N. ILG, ESQ.
_____

MOLLY A. DESARIO, ESQ.
Writer's E-Mail: mdesario@scalaw.com
_____

**SCOTT COLE & ASSOCIATES**
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CALIFORNIA 94612

Telephone (510) 891-9800
Facsimile  (510) 891-7030
_____

SCA Web Site: www.scalaw.com

*   Also Admitted in Maryland
**  Also Admitted in Washington
    and Virginia
_____

April 22, 2014

VIA ECF:

Honorable James L. Cott, United States Magistrate Judge
United States District Court, Southern District of New York
500 Pearl Street
New York, New York 10007

   re: **Johnson v. Equinox Holdings, Inc. (Case No. 1:13-CV-06313-RMB-JLC)**

Dear Judge Cott:

Plaintiffs Ronald Johnson and Seth Goldstein ("Plaintiffs") hereby respond to Defendant Equinox Holdings, Inc.'s ("Equinox" or "Defendant") April 18, 2014 letter regarding allegedly inappropriate email communications that Plaintiffs' counsel, Scott Cole & Associates, APC ("SCA"), sent to putative Class Members. Although this Court just recently admonished the parties to work together more cooperatively, Equinox nevertheless now seeks to waste this Court's time with a frivolous matter on which it never properly met and conferred with Plaintiffs. More importantly, there was nothing inappropriate or improper about SCA's communications with the Class Members. **Instead of citing one single authority to support its claims**, Defendant relies on vague assertions about certain statements in SCA's emails which it characterizes as "misleading" or containing improper "implications" or "suggestions." Nowhere does Defendant actually identify a false statement or instance of improper conduct, nor could it. Rather, Equinox paints SCA's emails as improper in the hope that this Court will enjoin SCA from gathering the Class Member testimony to which it is entitled. This Court should refuse to do so. For these reasons, as set forth more fully below, Defendant's requests should be denied.

**Plaintiffs' April 14th Email to Class Members**

There is nothing false or misleading about Plaintiffs' April 14 email to the putative Class Members and Defendant grasps at straws to allege so. First, Defendant suggests that there is something improper about sending an email to Class Members on the eve of Passover. Plaintiffs are unaware of any authorities requiring Plaintiffs' counsel to refrain from sending an email on a Jewish holiday.

Second, Defendant quibbles that the greeting in the email, "Dear Class Members," implies to the recipients that they are part of a Court-approved class or that SCA was contacting them as their legal representative. Defendant characterizes this greeting as the "most disturbing" part of the allegedly improper email. However, the use of the "Dear Class Member" greeting does not imply anything other than the fact that the email concerned class action litigation that has the potential to affect the legal rights of the Class Members receiving it. Plaintiffs would have preferred to address

an email to each Class Member individually but, given that there are 3,800+ Personal Trainers who have suffered wage violations at the hands of Defendant, they were forced by time constraints to generally address the email to them as "Class Member[s]." Furthermore, although Plaintiffs could have qualified the term "Class Member" by preceding it with the word "putative," it would be unreasonable to expect lay persons working as personal trainers in the fitness club industry to know the ins-and-outs of class action litigation, or, specifically, what the word "putative" means. Moreover, SCA's email unequivocally states that Plaintiffs "**need to show the Court that this case should proceed as a class action**," so it cannot be reasonably argued that SCA intended to deceive Class Members into thinking that this case had already been certified. Furthermore, whether SCA was acting as Court-approved class counsel in a certified class action when it sent the email or not, Class Members were and are still free to respond to the email or to ignore it. Either way, their decision had and has the same impact on their legal rights whether this case is certified or not.

Defendant also gripes that SCA created a "false impression" that this case is a certified class action through the email's closing statement explaining SCA's position in the litigation (i.e., SCA is on the side of the Personal Trainers – *not* Equinox). There is nothing untrue about this statement. Plaintiffs and their counsel are seeking to represent and recover unpaid wages for the putative class. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.12 (2009) ("Rule 23 and the case law make clear that, even before certification or a formal attorney-client relationship, an attorney acting on behalf of a putative class must act in the best interests of the class as a whole.").

Defendant goes on to complain that Plaintiffs' email suggests that Equinox condoned its dissemination to Class Members. Defendant identifies the subject line (i.e., "Equinox Lawsuit Newsletter") and the statement that Plaintiffs received the class list from Equinox as evidence of this accusation. While Defendant can read whatever it chooses into Plaintiffs' email, it does not make it so. First, Defendant's complaint as to the subject line of the email is ridiculous. Would they have preferred SCA to have titled it "Equinox Lawsuit Newsletter WHICH EQUINOX HAS NOT CONDONED US EMAILING YOU ABOUT"? Furthermore, the email's statement that Equinox provided SCA with the Class Members' contact information for the purpose of gathering evidence in support of Plaintiffs' motion for class certification is entirely accurate. As both parties know, it is well-settled law that employers are required to produce the class list in wage and hour class action like this one *just for that purpose*. Indeed, this Court ordered Equinox to do so here. *ECF* No. 41.

To really cause a stir, Defendant makes a big leap from complaining that SCA's email was simply misleading to complaining that it is "clearly improperly solicitous" and an "attempt to drum up additional Plaintiffs for [the] action." Not only does Defendant not offer one single piece of evidence to support this wild allegation, it is also entirely false. SCA already has two proposed class representatives with standing to pursue all class claims alleged in the operative pleading and, accordingly, there is no need for them to solicit Class Members. Defendant does not even attempt to explain how SCA's request for Class Members to contact its office with evidence supporting class certification can be reasonably construed as solicitation for new clients. Instead, Defendant's claim relies solely on that fact that Plaintiff Seth Goldstein initially contacted SCA in response to an advertisement on Facebook. As Defendant knows, that advertisement was posted before this action was filed and Defendant offers no evidence to suggest that SCA is currently running a Facebook ad soliciting more plaintiffs in this case. Indeed, Defendant fails to attempt to explain why SCA would wish to sign up every putative Class Member as a named party. To do so would obviate the need for Rule 23.

**Plaintiffs' April 16th Email to Class Members**

Defendant never attempted to meet and confer with SCA regarding the "egregious" April 16, 2014 email, in violation of this Court's Individual Rules of Practice. To avoid further wasting the Court's time, however, Plaintiffs respond to Defendant's meritless assertions.

Equinox complains that SCA's warning to Class Members that they are not required to speak to Equinox about this case and any retaliation against them on that basis is illegal "paints Equinox in a villainous light and attempts to thwart" communications between Equinox and the Class Members. SCA is under no obligation to paint Equinox in a favorable light. Indeed, SCA is counsel for class action plaintiffs suing Equinox; it is not part of Equinox's public relations team. It could be argued that Plaintiffs painted Equinox in a villainous light simply by filing this case. For the same reasons, Defendant's complaints about the "inflammatory presentation" of Plaintiffs' email ring hollow.

While SCA emphatically wishes to "thwart" any *coerced* testimony from Class Members obtained under the threat – whether implicit, perceived, or otherwise – of retaliation, SCA never suggested that Class Members could not speak to Equinox about this case. In fact, SCA explicitly stated that Class Members are free to speak to defense counsel if they wish. There is nothing improper about the fact that SCA informed Class Members that they are not *required* to talk to Equinox's lawyers and that anything they say can be used against them and the Class. Only an incompetent lawyer would advise a client or witness to speak to an adverse party without warning them of the consequences of doing so. *See Schick v. Berg,* 2004 U.S. Dist. LEXIS 6842, *18 (S.D.N.Y. Apr. 20, 2004) ("[P]re-certification class counsel owe a fiduciary duty not to prejudice the interests that putative Class Members have in their class action litigation.").

Defendant has had unilateral access to the Class Members for seven months because it refused to comply with well-settled law requiring production of the class list. Defendant has likely already obtained reams of Class Member declarations. During the parties' past meet and confer sessions over discovery, SCA offered to withdraw its request for the class list if Defendant would agree not to use any Class Member declarations in opposing certification. Defendant refused. Given that Defendant delayed producing discovery for months and now declares a crisis because of a couple of innocuous emails, it ought to be clear that if any party is seeking to prevent the other from obtaining discovery here, *it is Equinox - <u>not</u> Plaintiffs.*

As Defendant flounders in making these frivolous arguments, it again plays the "solicitation card." According to Equinox's counsel, the fact that SCA has experienced an overwhelming response to its email and solidarity among the Class clearly shows that SCA is engaged in improper solicitation. Defendant is apparently unable to fathom the common-sense notion that promoting Class Member solidarity would be conducive to convincing Class Members (who may be apprehensive about providing evidence against their current and/or former employer) to come forward and aid Plaintiffs and the class in their investigation to recover compensation that Equinox has unlawfully withheld from them.

Finally, Defendant argues that the <u>accurate</u> statement that any communications from Class Members seeking consultations or legal advice are protected by the attorney-client privilege implies that *any* communication between Class Members and Plaintiffs' counsel are so protected. This is, again, a stretch of logic, but even if this statement could reasonably be interpreted to imply such, this perceived implication would not prohibit Plaintiffs' counsel from informing Class Members of their

rights under the attorney-client privilege. *See Barton v. United States Dist. Court,* 410 F.3d 1104, 1111-1112 (9th Cir. 2005) (quotations omitted) ("[W]hen the communication between a lawyer and possible client proceeds beyond initial or peripheral contacts to acquisition by the lawyer of information that would be confidential were there to be representation, the privilege applies.").

*   *   *

The bottom line here is, Court intervention is unnecessary on any of the frivolous issues Equinox raises. As SCA already explained to Equinox's attorneys, if Equinox feels that it is prejudiced by SCA's communications with the class, it is free to contact the Class Members to set the record straight.

Very truly yours,

*/s/ Molly A. DeSario*

MOLLY DESARIO

MAD:mlm